FILED

2022 Sep-14  PM 02:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CINDY CAREY,                                    )
                                                )
              Plaintiff                         )
                                                )
       vs.                                      )   Case No.   4:21-cv-00107-HNJ
                                                )
SOCIAL SECURITYADMINISTRATION,                  )
COMMISSIONER,                                   )
                                                )
              Defendant                         )

## MEMORANDUM OPINION

Plaintiff Cindy Carey seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding her claim for a period of disability, disability insurance, and supplemental security income benefits.   The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.[1]

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.   The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including the entry of final judgment. (Doc. 14).

in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   20 C.F.R. §§ 404.1505(a), 416.905(a).   To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process.   *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).   The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far.   *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).   Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ."   *Id.* at §§ 404.1520(c), 416.920(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the listed impairments.   *Id.* at §§ 404.1520(d), 416.920(d).   If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial

2

gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(b)(3), 404.1520(g), 416.912(b)(3), 416.920(g). If the claimant can

3

perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. . . . Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139

S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Carey, age 46 at the time of the ALJ hearing, protectively filed applications for a period of disability, disability income, and supplemental security income benefits on May 14, 2019, alleging disability as of October 1, 2017.  (Tr. 39, 42, 226-39).  The Commissioner denied Carey's claims and her request for reconsideration.  (Tr. 100-169, 175-79).  The Administrative Law Judge ("ALJ") held a hearing on July 14, 2020 (Tr. 37-66), and issued a decision on August 3, 2020, finding Carey not disabled.  (Tr. 12-31).

Applying the five-step sequential process, the ALJ found at step one that Carey did not engage in substantial gainful activity after October 1, 2017, the alleged onset date.  (Tr. 17).  At step two, the ALJ found Carey manifested the severe impairments of lumbar facet arthrosis, lumbar spondylosis, status post lumbar discectomy, lumbar radiculopathy, obesity, and chronic venous insufficiency.  (*Id.*).  At step three, the ALJ found that Carey's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 22).

Next, the ALJ found Carey exhibited the residual functional capacity ("RFC") "to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; but should avoid concentrated exposure to extreme cold or heat; and any exposure to hazards."   (Tr. 23).

At step four, the ALJ determined Carey could not perform her past relevant work as an automobile detailer, cashier, housecleaner, floral arranger, jewelry maker, or caregiver.   (Tr. 29).   However, at step five, the ALJ determined that, considering Carey's age, education, work experience, and RFC, she could perform a significant number of other jobs in the national economy, such as telephone order clerk, information clerk, and sealer.   (Tr. 30).   Thus, the ALJ determined Carey did not suffer a disability, as defined by the Social Security Act, since October 1, 2017.   (Tr. 31).

Carey timely requested review of the ALJ's decision.   (Tr. 222-25).   On January 6, 2021, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision.   (Tr. 1-3).   On January 22, 2021, Carey filed her complaint with the court seeking review of the ALJ's decision.   (Doc. 1).

## ANALYSIS

In this appeal, Carey argues the ALJ's decision does not rest upon substantial evidence, and the ALJ relied upon a hypothetical question to the vocational expert (VE) that did not encompass all of Carey's impairments.   However, contrary to Carey's

contention, the court finds the ALJ's residual functional capacity finding enjoyed substantial evidentiary support, and the ALJ properly included all supported impairments in the hypothetical question to the VE.

I.    **Substantial Evidence Supported the ALJ's Residual Functional Capacity Finding**

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work."  20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).  The claimant's RFC represents "the most [he or she] can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Assessing a claimant's RFC lies within the exclusive province of the ALJ.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); 20 C.F.R. §§ 404.1546(c), 416.946(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ."); *Del Rio v. Berryhill*, No. 3:16-CV-00489-RFC, 2017 WL 2656273, at *8 (W.D. Tex. June 20, 2017) ("The ALJ has the sole responsibility of determining Plaintiff's RFC . . . .").

Social Security Ruling 96-8p dictates that an RFC assessment must first

determine the claimant's functional limitations and then address the claimant's ability to work on a function-by-function basis, pursuant to the functions described in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945.  SSR 96-8p, 1996 WL 374184, *1.  The ALJ does not need to enumerate every piece of evidence or function used in his or her determination, but rather must simply portray that he or she considered the claimant's medical conditions in totality.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009).  Once the ALJ has conducted that determination, the ALJ may then express the RFC in terms of exertional levels such as sedentary, light, medium, heavy, and very heavy.  SSR 96-8p, 1996 WL 374184, at *1; *see Castel*, 355 F. App'x at 263; *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Bailey v. Astrue*, No. 5:11-CV-3583-LSC, 2013 WL 531075, *6 (N.D. Ala. Feb.11, 2013).

The ALJ determined Carey retained the RFC to perform a limited range of sedentary work, which

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

As a foundation for that finding, the ALJ stated:

In the present case the claimant's impairments are not such as to prevent all ambulation, reaching, orthopaedic and postural maneuvers, as Dr. Arnold observed that the claimant walked at an even pace and "seemed to be clumsy at manipulating the walker." She sat still, gestured/moved naturally, could stand without delay, and got into the vehicle without assistance or overt indicators of pain/impairment. Furthermore, Dr. Arnold noted that the claimant assumed the responsibility of household manager for her father since 2013 after he had a stroke, and did the laundry at home and household chores. She related that the claimant served as his caregiver and even provided transportation for her son to a job in the neighboring community. However, viewing the evidence in a light most favorable to the claimant, the undersigned notes that in combination, the claimant's impairments reasonably reduce her ability to stand/walk for significant periods of time.

Therefore, upon consideration of all relevant evidence in the entire case record, including, but not limited to, the medical signs and laboratory findings, statements and other information provided by the claimant, by treating or examining physicians, or psychologist[s] and other persons, the undersigned concludes that the intensity, frequency, duration, and functionally limiting effects of the claimant's symptoms, including pain, preclude the claimant from performing greater than sedentary exertional tasks, as this level of work activity would minimize the strain and pressure placed upon the claimant's lumbar spine. Furthermore, given the claimant's history of venous insufficiency, the undersigned determined she could only perform postural activities occasionally. Moreover, given the possibility of instability and possible side effects from the claimant's prescribed medication, the undersigned notes that safety restrictions were deemed appropriate.

(Tr. 28). Thus, the ALJ satisfied the requirements to assess Carey's functional limitations, determine her ability to work on a function-by-function basis, and characterize her exertional abilities.

The ALJ also appropriately considered Carey's subjective complaints of pain.

A three-part "pain standard" applies when a claimant attempts to

9

> establish disability through her own testimony of pain or other subjective symptoms. *Wilson*[ *v. Barnhart*], 284 F.3d [1219,] 1225[ (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021).   A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability."   *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see also Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file."   SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016).   An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms.   *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons

for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms."   2016 WL 1119029 at *9; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Carey testified that, after her December 2018 back surgery, she "can't hardly lift anything to do anything."  (Tr. 45).  She can do only minimal grocery shopping, but the effort causes her to "huff and puff" and leaves her in tears.  She experiences problems climbing in and out of a bathtub, and she sometimes needs help changing clothes.  She uses a rolling walker or leans on walls or other surfaces to ambulate. Without a walker, she can barely walk 20 feet to her car, and she cannot walk to her mailbox.  She also experiences problems with tendinitis in her hands, and she drops items because she sometimes cannot feel the tips of her fingers.

She does not cook, and she can only perform household chores on days when she feels good.  She never feels pain-free, but her pain feels better some days than others.   On bad days, she cannot get out of bed, and on good days, she can walk to her porch.   Most days, the pain ranks at a level six or seven on a ten-point scale, but some days, it exceeds ten points.   She takes prescription Ibuprofen for the pain.   She sleeps only two hours at a time.   Lying down relieves her pain, but sitting, standing, and moving increase it.   She can sit for only 10 to 20 minutes at one time, and she needs to

prop up her feet to prevent swelling.  She typically only walks between her bedroom, the bathroom, and the kitchen in her home.  She tries not to drive because she experiences problems gripping the steering wheel, and the bouncing of the car hurts her back.   (Tr. 45-60).

The ALJ concluded that, "[a]lthough the documentary evidence establishes underlying medical conditions capable of producing some pain and other limitations, the substantial evidence does not support the conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling pain and other limitations."  (Tr. 24).  Even so, as discussed, the ALJ found Carey's "underlying medically determinable impairments, which are established by medically acceptable clinical and laboratory diagnostic techniques, can reasonably be expected to produce some symptoms."  (*Id*.).  The RFC finding encompassed the functional effects of those symptoms.

The ALJ also described in detail the medical records that supported her RFC finding, Carey's statements about her activities to medical providers, inconsistencies in the record, and the effect of obesity on Carey's level of impairment.  (Tr. 24-28).  The ALJ thus satisfied her obligation to consider all the evidence in the file and articulate the basis for her decision.   She also relied upon permissible considerations in assessing the consistency of Carey's subjective complaints with the objective medical evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

Carey asserts substantial evidence does not support the ALJ's decision because the medical records portray she experienced severe back pain both before and after her December 2018 surgery.   However, the mere presence of orthopedic pain does not support a finding of disability, as the functional effect of a claimant's impairments and symptoms governs the analysis.   *Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she has varus leg instability and shoulder separation.   However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Mansfield v. Astrue,* 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart,* 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

The records Carey cites do not support the existence of disabling functional limitations.   (*See* Doc. 17, at 15-17).   Carey cites Dr. R. Keith Morgan's August 21, 2019, consultative examination, but she refers only to those portions of the examination report that relay Carey's subjective complaints.   Dr. Morgan's clinical examination, on the other hand, revealed normal range of motion in the lumbar spine, hips, knees, ankles, shoulders, elbows, forearms, and wrists; normal grip strength and dexterity; no

evidence of overlying arthropathy or redness; normal sensation and motor strength in the lower extremities; and ambulation with the assistance of a walker.   Though Dr. Morgan opined Carey could only sit for ten minutes, stand for ten to 15 minutes, walk 20 steps, travel one hour, lift eight to ten pounds, and carry items ten steps, his clinical findings undermine the severity of those assessments, as the ALJ found.   (Tr. 29, 631-33, 637).   *See* 20 C.F.R. §§ 404.1520c, 416.920c (ALJ should primarily consider the supportability of a medical opinion and its consistency with the other medical evidence in evaluating the weight to afford the opinion).

In addition, at her December 17, 2018, initial post-operative visit with Dr. Ryan Carey reported "doing ok," though she used a walker for mobility.   On that date, she also reported receiving complete pain relief from the back surgery, though she did experience some sciatica. (Tr. 554-55).

On January 2, 2019, Carey reported "some pain and weakness when she walks but it[']s not as fierce," and she continued to use a walker for mobility.   Dr. Ryan noted she needed the walker due to "deconditioning," and he recommended physical therapy. (Tr. 552-53).

On January 23, 2019, Carey reported tingling in her legs, but she ambulated about the room with no difficulty.   She displayed normal reflexes, and the straight leg raising test did not produce discomfort.   She had not attended the prescribed physical therapy sessions.   Dr. Ryan reiterated the need for physical therapy and referred Carey to pain

14

management.   (Tr. 550-51).

Though these records demonstrate Carey's subjective complaints of pain, they do not provide substantial evidence of more severe functional impairments than the ALJ assessed.   The other medical records provide substantial evidentiary support for the ALJ's RFC finding.

On January 16, 2019, Carey received emergency treatment for right thumb pain, but she did not mention back pain.   The inspection revealed her back was normal. (Tr. 388-92).

On January 17, 2019, Carey complained of lower back injury and severe pain for two weeks after a fall.   The physical examination revealed moderate tenderness in the lumbar spine, normal muscular strength, and normal range of motion.   A lumbar spine x-ray revealed no acute fracture or dislocation.   The Emergency Department physician assessed acute urinary tract infection and back pain, but Carey's pain improved prior to her discharge.   (Tr. 579-84).

On February 6, 2019, Carey received emergency treatment for chest pains, but she did not complain about her back, and her extremities exhibited normal range of motion.   (Tr. 369-87).

On May 14, 2019, a lumbar spine x-ray displayed mild to moderate L5-S1 facet arthrosis, but no acute bony abnormality.   A pelvic x-ray exhibited no acute abnormality.   (Tr. 367-68).

On July 19, 2019, Carey reported mild bilateral lower extremity edema, and she no longer had a prescription for Lasix.   The clinical examination revealed normal back findings, bilateral non-pitting edema of the lower extremities, and normal extremity range of motion.   (Tr. 758-59).

On September 3, 2019, Carey underwent a psychological evaluation by Mary Arnold, PsyD.   She reported she did not follow up with physical therapy or pain management due to lack of resources.   She borrowed a walker from her grandmother. Dr. Arnold observed Carey to walk at an even pace, exhibit clumsiness when maneuvering her walker, sit still, gesture and move naturally, stand without delay, and enter her vehicle without assistance or any signs of pain or impairment.   Carey reported her daily activities included managing the household, doing laundry and household chores, caring for her father, providing transportation for her son to a job in a neighboring community, watching television, using the internet on her phone, and listening to music on YouTube.   She had taken a five-hour car trip to Mississippi on July 19, 2019.   (Tr. 643-46).

On September 19, 2019, a CT scan of the lumbar spine revealed minimal diffuse posterior disc bulging at L4/5, without significant narrowing of the spinal canal or neural foraminal narrowing.   At L5/S1, the imaging displayed a history of laminectomy on the right side, no evidence of spinal stenosis, and degenerative changes in the facet joints bilaterally.   (Tr. 756).

16

On September 28, 2019, Carey complained of mild lower extremity pain and swelling.   The examination of her back and extremities produced normal results, other than bilateral moderate edema of the lower extremities.   The Emergency Department physician assessed chronic venous insufficiency of the right and left lower extremities with edema and pain.   He recommended weight loss, a low-salt diet, daily walking, and compression stockings.   (Tr. 740-43).

On November 8, 2019, Carey complained of moderate lower back pain radiating into the left hip and thigh after lifting an object.   The clinical examination revealed moderate vertebral point tenderness over the mid and lower lumbar spine and moderate soft tissue tenderness in the left lower lumbar area.   Carey exhibited normal range of motion in her extremities.   A lumbar spine x-ray displayed no acute abnormalities. The Emergency Department physician assessed acute traumatic pain in the lower back, with radiation into the left leg, and she prescribed a limited amount of pain medication. (Tr. 727-31).

On February 14, 2020, Carey reported moderate left knee pain and swelling, without any acute injury.   The clinical examination revealed normal back findings and mild tenderness and swelling in the left knee.   The knee also exhibited limited range of motion due to pain.   An x-ray revealed no acute bony abnormalities.   The Emergency Department Physician recommended a knee immobilizer, and he prescribed Ibuprofen. (Tr. 711-14).

On March 5, 2020, Carey complained to Medical Asset Doctors Group that she experienced back pain, but her orthopedic doctor would not prescribe her anymore pain medication, as he had released her.   Other medication did not relieve her pain, which averaged level ten of ten.   Carey reported she could not complete daily living activities without difficulty.   The clinical examination revealed lower spine tenderness but no spasm, full range of motion with pain at extremes of motion, negative straight leg raise test, 3/4 deep tendon reflexes in the bilateral lower extremities, and no edema, redness, or tenderness of extremities.   Carey did not desire an orthopedic referral "because he will not do anything and she cannot afford it."   The nurse practitioner administered a Toradol injection. (Tr. 768-70).

Though the longitudinal medical record demonstrates Carey has consistently experienced and expressed orthopedic pain, it does not provide substantial evidentiary support for an RFC finding more restrictive than the measure the ALJ imposed. Objective imaging results depict no more than mild to moderate deficiencies, and clinical examinations regularly produced normal range of motion, normal muscle strength, negative straight leg raise tests, good reflexes, and no more than moderate tenderness in the spine.   As the ALJ stated, Dr. Arnold observed Carey moving fairly normally, and Carey reported activities inconsistent with her alleged level of impairment.   Carey occasionally experienced acute exacerbations of her back condition, but the evidence does not indicate those extreme deficiencies persisted on a

long-term basis.

The ALJ also considered medical opinion evidence.   On September 19, 2019,
Melissa Mayfield, a nurse practitioner, completed an Alabama Department of Revenue
Motor Vehicle Division Application for Disability Access Parking Privileges form.   She
requested Carey receive a disability access placard due to long-term limitations of her
ability to walk.   Mayfield checked boxes on the form indicating Carey could not walk
200 feet without stopping to rest or walk without the use of an assistive device, and an
orthopedic condition severely limited her ability to walk.   (Tr. 772).   However, the ALJ
did not find that assessment completely persuasive because

> x-rays of the claimant's lumbar spine taken at that time by Dr. Greer
> revealed only minimal diffuse posterior disc bulging without significant
> narrowing of the spinal canal or neural foraminal narrowing at L4-5.   In
> fact, the claimant testified that Nurse Mayfield signed the application at
> the claimant's request, after she answered in the affirmative that she used
> an assistive device and that she got out of breath, and not due to any actual
> physical examination of the claimant on behalf of Nurse Mayfield.

(Tr. 29).   The ALJ properly considered the consistency of Mayfield's assessment with
the other medical evidence and the extent to which Mayfield's clinical examination of
Carey supported her opinion, *see* 20 C.F.R. §§ 404.1520c, 416.920c, and, as discussed,
the record supports the ALJ's decision.

On October 3, 2019, Dr. Robert Heilpern, a state agency physician, reviewed
Carey's medical records and concluded she could occasionally lift and/or carry up to
50 pounds, frequently lift and carry up to 25 pounds, sit for six hours in an eight-hour

workday, stand and/or walk for six hours in an eight-hour workday, and perform unlimited pushing and pulling movements within her weight limitations.  She could perform unlimited balancing; never climb ladders, ropes, or scaffolds; and frequently climb ramps and stairs, stoop, kneel, crouch, and crawl.  She had no manipulative, visual, or communicative limitations.  She should avoid all exposure to hazards like machinery and heights, and avoid concentrated exposure to extreme heat and cold, but she could tolerate unlimited exposure to wetness, humidity, noise, vibrations, fumes, odors, dusts, gases, and poor ventilation.  Dr. Heilpern attributed Carey's limitations to her back condition, but he opined she experienced significant improvement in her functioning since her surgery. (Tr. 111-13).

On December 20, 2019, after Carey requested reconsideration of the Commissioner's initial decision, Dr. Krishna Reddy, a second state agency physician, reviewed her.  Dr. Reddy opined Carey could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to ten pounds, sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and perform unlimited pushing and pulling movements within her weight limitations.  She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but she could never climb ladders, ropes, or scaffolds.   She did not possess any manipulative, visual, or communicative limitations.   She could tolerate unlimited exposure to wetness, humidity, noise, vibration, fumes, odors, dusts, gases, and poor ventilation, but

she should avoid concentrated exposure to extreme hot and cold, and she should avoid all exposure to hazards such as machinery and heights.   Dr. Reddy noted Carey reported tingling and used a walker even after her lumbar surgery, but she also observed x-rays produced good results; clinical examinations produced normal range of motion, sensation, and motor strength; and Carey could independently perform personal care tasks.   (Tr. 152-54).

The ALJ reviewed Dr. Heilpern's and Dr. Reddy's opinions, but he did not consider them "entirely persuasive, due to the subsequent added evidence."   (Tr. 29). The ALJ did not specify what subsequent evidence might have rendered those state agency physicians' opinions more persuasive, but regardless, those opinions do not undermine the substantial evidence supporting the ALJ's RFC assessment, as the ALJ assessed more significant limitations than Drs. Heilpern and Reddy.

In summary, though Carey disagrees with how the ALJ treated some of the facts, she has not offered any argument or pointed to any facts that undermine the substantial evidence supporting the ALJ's decision.   The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ.   *See Winschel*, 631 F.3d at 1178; *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").   Accordingly, substantial evidence supported the ALJ's decision, and the ALJ did not err.

21

## II.      The ALJ Properly Included All Supported Limitations in the Hypothetical Question to the Vocational Expert

"'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11ᵗʰ Cir. 2012) (quoting *Wilson*, 284 F.3d at 1227 (11ᵗʰ Cir. 2002) (per curiam)).   However, "'[t]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'" *Id.* (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11ᵗʰ Cir. 2004)).

The ALJ's hypothetical question to the vocational expert mirrored her residual functional capacity finding.   (Tr. 23, 64).   Carey asserts the question "did not fully state [her] pain and limitation [d]ue to pain."   (Doc. 17, at 22).   However, as previously stated, the mere presence of pain does not support a finding of disability, as the functional effects of the pain govern the analysis.   *See Moore,* 405 F.3d at 1213 n.6; *Mansfield*, 395 F. App'x at 531; *Osborn*, 194 F. App'x at 667.   Moreover, as previously discussed, the ALJ's RFC finding included limitations to accommodate her symptoms and avoid exacerbating her condition, and substantial evidence supported that finding. The court cannot discern from the record any limitations the ALJ could have included that would change the disability finding, other than those limitations the ALJ properly considered unsupported.   Accordingly, the court concludes the ALJ included all of

Carey's impairments in the hypothetical question to the vocational expert, and she properly relied on the vocational expert's testimony.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 14th day of September, 2022.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE